UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LELAND HOUSE LIMITED PARTNERSHIP
COMPANY, a Michigan Limited Partnership,

   Plaintiff/Counterclaim Defendant

 vs.

RAMADA FRANCHISE SYSTEMS, INC.,
n/k/a RAMADA WORLDWIDE INC.,
a Delaware Corporation,

   Defendant/Counterclaimant and
   Third-Party Plaintiff,

 vs.

MICHAEL HIGGINS,

   Third-Party Defendant.

Case No. 05-73472

Hon. Marianne O. Battani

_____/

Martin C. Weisman (P22139)
Wilfred Eric Steiner
Attorneys for Plaintiff
30100 Telegraph Road, Suite 428
Bingham Farms, Michigan 48025
(248) 258-2700

DICKINSON WRIGHT PLLC
Jason P. Klingensmith (P61687)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3051

HAHN LOESER & PARKS LLP
Steven A. Goldfarb (0030186)
Rose Marie Fiore (0065243)
Joni Todd (0078768)
Attorneys for Defendant
3300 BP Tower
200 Public Square
Cleveland, OH 44114-2301
(216) 621-0150

_____/

**ANSWER, COUNTERCLAIM, AND THIRD PARTY COMPLAINT OF**
**<u>RAMADA FRANCHISE SYSTEMS, INC. n/k/a RAMADA WORLDWIDE INC.</u>**

For its Answer to the Complaint of Plaintiff Leland House Limited Partnership Company ("Leland House"), Defendant Ramada Franchise Systems, Inc. n/k/a Ramada Worldwide Inc. ("Ramada") states:

1. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 and, therefore, denies the same.

2. Responding to paragraph 2, Ramada admits that it is a Delaware Corporation that is authorized to do business in the State of Michigan, and denies each and every remaining allegation contained in paragraph 2.

3. Responding to paragraph 3, Ramada admits that it entered into a License Agreement with Leland House dated July 30, 1998 (the "License Agreement"), which agreement speaks for itself, and denies each and every remaining allegation contained in paragraph 3.

4. Ramada denies the allegations contained in paragraph 4.

5. Responding to paragraph 5, Ramada states that, having removed this action to this Court, Ramada denies that jurisdiction and venue were proper in the Circuit Court for the County of Wayne, State of Michigan.

## BACKGROUND FACTS

6. Responding to paragraph 6, Ramada admits that Superbowl XL is scheduled to be played in the City of Detroit in 2006, and denies each and every remaining allegation contained in paragraph 6.

7. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and, therefore, denies the same.

8. Ramada admits the allegations contained in paragraph 8.

2

9. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, denies the same.

10. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 and, therefore, denies the same.

11. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 and, therefore, denies the same.

12. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, therefore, denies the same.

**FACTS GIVING RISE TO INSTANT ACTION**

13. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 and, therefore, denies the same.

14. Ramada admits the allegations contained in paragraph 14

15. Ramada denies the allegations contained in paragraph 15.

16. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, therefore, denies the same.

17. Ramada denies the allegations contained in paragraph 17.

18. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 and, therefore, denies the same.

19. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, therefore, denies the same.

20. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 and, therefore, denies the same.

21. Ramada is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 and, therefore, denies the same.

22. Ramada denies the allegations contained in paragraph 22.

23. Responding to paragraph 23, Ramada admits that Plaintiff was informed that the reservations were valid and denies each and every remaining allegation contained in paragraph 23.

24. Responding to paragraph 24, Ramada admits that Leland House closed unreserved inventory on February 21, 2005, and denies each and every remaining allegation contained in paragraph 24. Further responding, Ramada states that the reservations which are the subject of the Complaint were made prior to any of Leland House's alleged attempts to close inventory.

25. Ramada denies the allegations contained in paragraph 25.

26. Ramada admits the allegations contained in paragraph 26.

27. Ramada denies the allegations contained in paragraph 27.

28. Responding to paragraph 28 of the Complaint, Ramada admits that on February 6, 2005, Linda Merlotti made reservations for eight rooms for the nights of February 2-5, 2006, under the names of Linda Merlotti, Jason Merlotti, and Mary Ann Spann, and denies each and every remaining allegation contained in paragraph 28.

29. Ramada denies the allegations contained in paragraph 29.

30. Responding to paragraph 30 of the Complaint, Ramada admits that it advised Leland House that it must honor the confirmed reservations and denies each and every remaining allegation contained in paragraph 30.

31. Ramada denies the allegations contained in paragraph 31.

32. Ramada denies the allegations contained in paragraph 32.

33. Ramada denies the allegations contained in paragraph 33.

34. Responding to paragraph 34, Ramada admits that Leland House has not paid certain amounts due Ramada pursuant to the License Agreement, and denies each and every remaining allegation contained in paragraph 34. Further responding, Ramada specifically denies that it breached the License Agreement.

35. Responding to paragraph 35, Ramada admits that it properly removed Leland House from the CRS system, and denies each and every remaining allegation contained in paragraph 35. Further responding, Ramada specifically denies that it breached the License Agreement or caused Leland House any financial loss.

36. Responding to paragraph 36, Ramada denies that Leland House is entitled to declaratory judgment in its favor, monetary damages, or relief of any kind whatsoever from Ramada.

## COUNT I – BREACH OF FRANCHISE AGREEMENT

37. Responding to paragraph 37, Ramada incorporates by reference all of the foregoing paragraphs as if fully restated herein.

38. Responding to paragraph 38, Ramada admits that Ramada and Leland House entered into the License Agreement, which agreement speaks for itself, and denies all allegations inconsistent with the License Agreement.

39. Ramada denies the allegations contained in paragraph 39.

40. Ramada denies the allegations contained in paragraph 40.

41. Ramada denies the allegations contained in paragraph 41.

42. Ramada denies the allegations contained in paragraph 42.

## **COUNT II – PROMISSORY ESTOPPEL**

43. Responding to paragraph 43, Ramada incorporates by reference all of the foregoing paragraphs as if fully restated herein.

44. Responding to paragraph 44, Ramada states that the License Agreement speaks for itself, and denies all allegations inconsistent with the License Agreement.

45. Responding to paragraph 45, Ramada admits that customers may contact the CRS directly for purposes of inquiring about or making reservations at Ramada guest-lodging facilities, and denies each and every remaining allegation contained in paragraph 45.

46. Responding to paragraph 46 of the Complaint, Ramada admits that its franchisees can "block" or "close" room inventory up to 52 weeks in advance of a date, and denies each and every remaining allegation contained in paragraph 46.

47. Ramada denies the allegations contained in paragraph 47.

48. Ramada denies the allegations contained in paragraph 48.

49. Ramada denies the allegations contained in paragraph 49.

50. Ramada denies the allegations contained in paragraph 50.

51. Ramada denies the allegations contained in paragraph 51.

52. Responding to paragraph 52, Ramada admits that it advised Leland House that it must honor all confirmed reservations. Further answering, Ramada denies that that the reservations were improperly granted and denies each and every remaining allegation contained in paragraph 52.

53. Ramada denies the allegations contained in paragraph 53.

## COUNT III – DECLARATORY ACTION

54. Responding to paragraph 54, Ramada incorporates by reference all of the foregoing paragraphs as if fully restated herein.

55. Responding to paragraph 55, Ramada states that the License Agreement speaks for itself, and denies all allegations inconsistent with the License Agreement.

56. Ramada denies the allegations contained in paragraph 56.

57. Ramada denies the allegations contained in paragraph 57.

58. Ramada denies the allegations contained in paragraph 58.

## AFFIRMATIVE DEFENSES

Pleading in the alternative and without prejudice to its previous denials, Ramada states as its affirmative defenses to Leland House's Complaint, the following:

### FIRST AFFIRMATIVE DEFENSE

Leland House has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Leland House's claims are barred by Leland House's prior breaches of contract, including, but not limited to, Leland House's breaches of the License Agreement.

### THIRD AFFIRMATIVE DEFENSE

The License Agreement, together with its exhibits and attachments, is the entire agreement of the parties, and by its terms is an integrated document that supersedes all prior agreements or understandings between the parties.

## FOURTH AFFIRMATIVE DEFENSE

The License Agreement provides, at section 17.2 that "all modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective."

## FIFTH AFFIRMATIVE DEFENSE

There are no express or implied covenants or warranties, oral or written, between the parties except as expressly stated in the License Agreement.

## SIXTH AFFIRMATIVE DEFENSE

Leland House's claims are or may be barred by the doctrines of waiver, estoppel, fraud, and/or laches.

## SEVENTH AFFIRMATIVE DEFENSE

Leland House's claims are or may be barred by the doctrines of justification, privilege, and/or Ramada's exercise of its absolute rights.

## EIGHTH AFFIRMATIVE DEFENSE

Leland House has failed to mitigate its alleged damages.

## NINTH AFFIRMATIVE DEFENSE

Leland House's alleged damages are barred or reduced by the doctrines of set-off and/or recoupment.

## TENTH AFFIRMATIVE DEFENSE

Leland House's alleged injuries were not caused by any act or omission on the part of Ramada, but were proximately caused, to the extent they occurred, solely or in part, by the acts or omissions of Leland House and others over whom Ramada had no control, no right of control, and for whose actions Ramada is not and cannot be held liable.

### ELEVENTH AFFIRMATIVE DEFENSE

Leland House's claims are or may be barred by the parol evidence rule.

### TWELFTH AFFIRMATIVE DEFENSE

Leland House is not entitled to special and/or exemplary damages.

### THIRTEENTH AFFIRMATIVE DEFENSE

Ramada denies each and every allegation not specifically admitted herein.

### FOURTEENTH AFFIRMATIVE DEFENSE

Ramada specifically reserves the right to raise additional affirmative defenses as may become available through investigation and discovery.

**WHEREFORE**, having fully answered the Complaint, Ramada respectfully requests the Court to dismiss the allegations within the Complaint with prejudice and award costs and such other further relief to Ramada as the Court may deem just and proper.

### COUNTERCLAIM/THIRD-PARTY COMPLAINT

For its Counterclaim against Plaintiffs/Counterclaim Defendants Leland House Limited Partnership Company ("Leland House") and for its Third Party Complaint against Third-Party Defendant Michael Higgins ("Higgins"), Counterclaimant/Third-Party Plaintiff Ramada Franchise Systems, Inc. n/k/a Ramada Worldwide Inc. ("Ramada") states as follows:

1. Ramada incorporates by reference the foregoing Answer as if fully restated herein.

2. Ramada is a corporation organized and existing under the laws of Delaware and has its principal place of business in Parsippany, New Jersey.

3. Leland House is a limited partnership duly organized under the laws of the State of Michigan.

4. Upon information and belief, Higgins is an individual citizen and resident of Michigan.

5. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**ALLEGATIONS COMMON TO ALL COUNTS**
**The Agreements Between The Parties**

7. On or about July 30, 1998, Ramada entered into a license agreement (the "License Agreement") with Leland House for the operation of a 150-room guest lodging facility located at 400 Bagley Avenue, Detroit, Michigan, Site No. 617-86170-2 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A and incorporated herein by reference.

8. Pursuant to section 5 of the License Agreement, Leland House is obligated to operate a Ramada® guest lodging facility for a 15-year term.

9. Pursuant to sections 7, 18 and Schedule C of the License Agreement, Leland House is required to make certain periodic payments to Ramada for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

10. Pursuant to section 3.9 of the License Agreement, Leland House is required to prepare and submit monthly reports to Ramada disclosing, among other things, the amount of gross room revenue earned by Leland House at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to Ramada.

11. Pursuant to section 11.1 of the License Agreement, Leland House would be in default if it failed to make any payment when due, failed to perform any of its other obligations

when the License Agreement or the System Standards Manual required, or otherwise breached the License Agreement.

12. Pursuant to section 17.4 of the License Agreement, Leland House agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

13. Effective as of the date of the License Agreement, Higgins provided Ramada with a Guaranty of Leland House's obligations under the License Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit B.

14. Pursuant to the terms of the Guaranty, Higgins agreed, among other things, that upon a default by the Licensee under the License Agreement and notice from Ramada, he would "immediately make each payment and perform or cause [Leland House] to perform, each unpaid or unperformed obligation of [Leland House] under the [License] Agreement."

### Leland House's Default

15. By letter dated July 26, 2005, a true copy of which is attached as Exhibit C, Ramada gave notice to Leland House that it was in default of its financial obligations under the License Agreement, and specifically advised Leland House that it: (a) owed Ramada approximately $59,161.47 as of July 18, 2005, and (b) had thirty (30) days to cure its monetary default.

### FIRST CLAIM FOR RELIEF
### (Accounting)

16. Ramada repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 15 of the Counterclaim and Third Party Complaint.

17. Pursuant to sections 3.8 and 3.9 of the License Agreement, Leland House agreed to allow Ramada to examine, audit, and make copies of Leland House's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

18. The calculation of the monetary amounts sought by Ramada in this action is based on the gross room revenue information supplied to Ramada by Leland House and, to the extent there has been non-reporting, Ramada's estimate as to the gross room revenue earned by Leland House.

19. The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Leland House.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

20. Ramada repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 19 of the Counterclaim and Third Party Complaint.

21. Pursuant to sections 7, 18 and Schedule C of the License Agreement, Leland House was obligated to remit Recurring Fees to Ramada.

22. Despite its obligation to do so, Leland House failed to remit certain of the Recurring Fees due and owing under the License Agreement.

23. As of the filing of this Counterclaim and Third Party Complaint, the amount of the Recurring Fees due from Leland House to Ramada pursuant to the License Agreement is approximately $86,320.88.

24. Leland House's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged Ramada.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

25. Ramada repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 24 of the Counterclaim and Third Party Complaint.

26. Pursuant to the License Agreement, Leland House is permitted to use the Ramada® name, trademarks and service marks ("Ramada Marks") in consideration of, *inter alia*, Leland House's obligation to pay certain Recurring Fees due and owing under the License Agreement.

27. Leland House has and is using the Ramada Marks in connection with the Facility.

28. Despite its obligation to do so, Leland House has failed to pay certain Recurring Fees due and owing under the License Agreement.

29. In addition, Leland House has benefited from its use of the Ramada Marks and has paid no Recurring Fees to Ramada in return for this benefit.

30. Leland House's failure to compensate Ramada constitutes unjust enrichment and has proximately caused damage to Ramada.

## FOURTH CLAIM FOR RELIEF
### (Breach of Guaranty)

31. Ramada repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 30 of the Counterclaim and Third Party Complaint.

32. Pursuant to the terms of the Guaranty, Higgins agreed, among other things, that upon a default under the License Agreement, he would immediately make each payment and perform each obligation required of Leland House under the License Agreement.

33. Despite his obligation to do so, Higgins has failed to make any payments or perform or cause Leland House to perform each obligation required under the License Agreement.

34. Pursuant to the Guaranty, Higgins is liable to Ramada for all amounts due and owing under the License Agreement caused by Leland House's breach of contract and unjust enrichment, and for an accounting of Leland House's operations.

35. Higgins' failure to pay the fees due under the License Agreement, and failure to cause Leland House to perform each obligation required under the License Agreement, has proximately caused damage to Ramada.

## **DEMAND FOR JUDGMENT**

**WHEREFORE**, Defendant/Third-Party Plaintiff, Ramada, respectfully requests that this Court enter judgment as follows:

1. On the First Claim for Relief, ordering Leland House to account to Ramada for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks; and

2. On the Second Claim for Relief, enter judgment in favor of Ramada and against Leland House for damages in the amount of actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees and costs of suit.

3. On the Third Claim for Relief, enter judgment in favor of Ramada and against Leland House for all amounts that should be paid to compensate Ramada for the period during which Leland House misused the Ramada Marks and was thereby unjustly enriched, plus interest and attorneys' fees; and

4. On the Fourth Claim for Relief, enter judgment in favor of Ramada and against Higgins for all amounts due and owing under the License Agreement, together with interest, attorneys' fees and costs of suit, and order Higgins to account to Ramada for any and all revenue derived by Leland House as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks; and

5. That this Court award Ramada the costs and expenses incurred by Ramada, including all reasonable attorneys' fees, in connection with enforcing Ramada's rights and remedies under the terms of the License Agreement; and

6. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:   /s/ Jason P. Klingensmith
     Jason P. Klingensmith (P61687)
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500

and

HAHN LOESER & PARKS LLC
Steven A. Goldfarb (0030186)
Rose Marie Fiore (0065243)
Joni Todd (0078768)
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114
Phone:  (216) 621-0150
Telefax:  (216) 241-2824

Dated:  November 1, 2005

*Attorneys for Defendant/ Counterclaimant/Third-Party Plaintiff Ramada Worldwide Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Martin C. Weisman – mweisman@wysr-law.com, pcotrill@wysr-law, yhenderson@wysr-law.com

and I hereby certify that I have mailed by U.S. Postal Service the paper to the following non-ECF participant(s):

Steven A. Goldfarb, Esq.
Rose Marie Fiore, Esq.
Hahn Loeser & Parks LLC
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114

    /s/     Jason P. Klingensmith
Jason P. Klingensmith (P61687)
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500

DETROIT 28753-2 905346v1